411 So.2d 2 (1982)
STATE of Louisiana
v.
Ernest DAVIS.
No. 81-KA-0994.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*3 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, John H. Craft, David J. Cortes, Asst. Dist. Attys., for plaintiff-appellee.
Clyde D. Merritt of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
SAVOIE[*], Justice ad hoc.
An Orleans Parish Grand Jury returned a true bill of indictment against Ernest Davis, the defendant herein, for the second degree murder of Kathryn Sewell, on January 9, 1980, in violation of La.R.S. 14:30.1. The defendant stood mute to the charge and the trial court entered a plea of not guilty thereto. Defense counsel then stated that the defendant would exercise his right to a jury trial. On September 29, 1980, the defendant was tried before a jury and found guilty by a vote of eleven to one. On October 6, 1980, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals his conviction, making four arguments on five assignments of error. The assignments of error are, as follows:
ASSIGNMENTS OF ERROR:
1. The trial court erred in excusing a juror for cause sua sponte.

2. The court erred in allowing evidence of prior offenses, and in denying mistrials based on that evidence.
3. The court erred in denying a mistrial after non-responsive answers from a state witness made it impossible to obtain a fair trial.
4. The court erred in not allowing the defendant to testify on direct examination as to his prior record.
5. The court erred in its charge on the presumptions surrounding specific intent.

STATEMENT OF FACT
Kathryn Sewell, the victim herein, died on January 9, 1980, as the result of injuries she previously sustained to her head and face. Dr. Paul McGarry, who examined the corpse and was accepted as an expert in neuropathology, concluded that a subdural hematoma to the head was the cause of death, and the result of injuries inflicted on or about December 31, 1979. The bruises, abrasions and other injuries sustained to the victim's face, ears and head were concluded to be consistent with injuries arising out of a beating with a bare fist but inconsistent with the victim falling and striking her head on the floor.
Fannie Skinner, the victim's mother, went to visit her daughter in the early afternoon of December 31, 1979, at an apartment her daughter shared with the defendant. The apartment was located at Third and Danneel Streets in New Orleans, above the Alice Inn (a lounge/ballroom operated by Clarence Simmons.) Mr. Simmons allowed Ms. Skinner and her husband inside and brought the defendant downstairs. As they proceeded upstairs the defendant told them that he could not awaken Kathryn Sewell. Ms. Skinner noticed blood *4 was coming out of her daughter's nose and there was a little bruise on her face. Kathryn Sewell lay unconscious on the bed. The defendant told Ms. Skinner that her daughter was drunk, had smoked some marijuana and had fallen down several times. The victim could not be awakened at this time. Ms. Skinner left and called her granddaughter, Fannie Sewell, to come and pick up the victim.
At approximately 2:00 p. m. on December 31, 1979, Fannie Sewell and her husband came to the apartment to pick up her mother. They heard moans and groans coming from the apartment as they proceeded upstairs. The front door to the apartment was ajar and they saw the defendant hitting the victim in the face and saying "What's the matter with you? You can't talk. You're not talking to me." Fannie Sewell then pushed the defendant away and her husband carried the victim away. Fannie Sewell said there was blood all over the bed and the apartment at the time. They first took the victim to Fannie Skinner's house, not realizing how seriously she was hurt, and then proceeded to work. At approximately 1:30 A. M., the victim was brought to Charity Hospital because she was bleeding badly and had not regained consciousness. The admitting clerk at Charity Hospital was told that the victim was injured when she fell to the floor and that she had this kind of problem before. Kathryn Sewell died on January 9, 1980.
It appears that both the defendant and the victim had drinking problems. Testimony for the state was to the effect that the defendant had beaten the victim on three previous occasions. The first was in June of 1979 when the victim was hospitalized for a black eye and a broken hand. The second was in September of 1979 when the victim was hospitalized with an injury to the left ear and the third was in October of 1979 for another beating. Testimony for the state was also to the effect that on each of the three occasions, the defendant had admitted the beatings and apologized. Defendant's testimony was to the effect that there was only a single instance of his beating the victim.
The defendant testified that he did not beat the victim on December 31, 1979. He claims the victim was drunk and smoked some marijuana which her son had given to her and she fell off the bed several times, hitting her face on the bed and the floor. Clarence Simmons testified that he saw the victim's son and another person upstairs whipping the defendant and the victim. In rebuttal, the victim's son, Atkins Washington, testified that he never did beat his mother and never gave her marijuana.
Assignment of Error No. 1
By this assignment, defense counsel argues that the trial court erred in excusing a juror sua sponte. Defense counsel submits that excusal without grounds for a challenge for cause constitutes reversible error.
The following transpired during defense counsel's voir dire examination:
MR. MERRITT: Mr. Becker, you indicated that your prior experience
A JUROR: I haven't served this month but many times before that.
MR. MERRITT: You say you still could be an objective juror and give the state and defense a fair and impartial hearing?
A JUROR: Don't put words in my mouth.
MR. MERRITT: I am asking youI understood the judge to ask you that question and apparently you said, "yes".
A JUROR: Like I said before, it was a very traumatic experience to sit on a murder case.
MR. MERRITT: Do you believe that would have someyou would be weighing on that rather than deliberating the evidence?
A JUROR: I feel like I would not be able to render a just decision. I have veryI just feel it would not be to the best of interest to the party that I would serve.
THE COURT: All right, Mr. Becker, you are excused. Thank you.
MR. MERRITT: Note an exception to the court's ruling.
*5 This prospective juror appeared antagonistic to the defense. Although questionable whether his claimed inability to render a just verdict would satisfy an excusal for cause, the matter lies within the sound discretion of the trial court. See e.g. State v. Chapman, 410 So.2d 689 (La.1981). In State v. St. Andre, 263 La. 48, 267 So.2d 190 (1972), this Court upheld the excusal of a prospective juror by a trial court, ex proprio motu, under the authority vested in it through La.C.Cr.P. Art. 787 (noting that this article complements La.C.Cr.P. Arts. 797 and 798). Moreover, since the state did not exhaust its peremptory challenges, an erroneous sua sponte excusal of a prospective juror might not afford the defendant a ground for complaint. See La.C.Cr.P. Art. 800.
This assignment lacks merit.
Assignments of Error Nos. 2 and 3.
By these assignments, defense counsel argues that the trial court erred in allowing the state to introduce evidence of prior offenses allegedly committed by the defendant and in denying mistrials based on that evidence. Defense counsel submits that evidence of three previous alleged beatings inflicted on the victim by the defendant were too remote to be admissible into evidence.
The state submitted a Notice of Intent to Introduce Evidence of Similar Acts of Defendant to Prove Knowledge, System and Intent, and the trial court held a pretrial hearing on the matter in accordance with State v. Prieur, 277 So.2d 126 (La.1973). The state actually submitted two such notices. The first notice did not set forth any specific acts or dates. The second notice specified the dates of the alleged beatings and who would testify to corroborate these beatings. On September 24, 1980, the trial court ruled that the state would be allowed to introduce evidence of these other acts, subject to certain conditions.
The testimony at trial concerning these alleged previous beatings followed the notice submitted to the defendant. The three specific acts complained of occurred in June of 1979, September of 1979, and October of 1979. All three instances involved the victim and the defendant. All three alleged beatings resulted in injuries to the victim's face and head. After each beating, the defendant allegedly apologized and promised not to do it again.
Evidence of these prior beatings does seem relevant. The theory of defense throughout the case appeared to be that the victim was intoxicated and was falling on her face. The three extraneous acts introduced to the jury have independent relevance to prove that the defendant did inflict the injuries sustained by the victim and are not too remote. See State v. LaFleur, 398 So.2d 1074 (La.1981); State v. Walker, 394 So.2d 1181 (La.1981); State v. Humphrey, 381 So.2d 813 (La.1980); State v. Monroe, 364 So.2d 570 (La.1978); State v. Morris, 362 So.2d 1379 (La.1978).
These assignments lack merit.
Assignment of Error No. 4
By this assignment, defense counsel argues that the trial court erred in refusing to allow the defendant to testify on direct examination concerning his prior criminal record.
The trial court interceded during the testimony of the defendant to instruct defense counsel that he could not ask the defendant if he had been previously convicted of a crime because the question bears on credibility. The following transpired during the cross-examination of the defendant:
Q How much of your life have you spent going by the name of Ernest Gramps?
THE COURT You are assuming something that hasn't been testified to.
EXAMINATION BY MR. CORTES:
Q Isn't it true that a while ago, like ten years ago, you used to go by the name of Ernest Gramps in Thibodaux, Louisiana?
A I have been going by that all my life. I was adopted by Ernest Davis.
Q You did change your name?
A I go by Ernest Davis.
Q I suspect you had a good reason for that.

*6 MR. MERRITT: I object to that.
THE COURT: Disregard counsel's statement, it's not testimony.
(R., T.Tr., P. 136).
Defense counsel submits that the combined effect of his being precluded from questioning the defendant as to his prior criminal record and the prosecutor's suggestion that the defendant's use of two names was for less than legitimate reasons, prejudiced the defendant's rights.
The defendant was able to explain that his adoption led to the use of these two names. Furthermore, because Defendant's credibility was never impeached with evidence of prior convictions, the inability of the defense to bring these convictions out on direct examination in no way undermined the accused's reputation. La.C.Cr.P. Art. 921.
This assignment lacks merit.
Assignment of Error No. 5
By this assignment, defense counsel argues that the trial court erred in charging the jury that a specific intent may be implied from the mere fact of a homicide.
Before the trial court charged the jury, defense counsel reserved the right to object after the trial court completed the charge. The trial court then gave the following charge to the jury, which the defendant subsequently objected to:
A specific intent may be implied where there are no external signs of the intent beyond the mere fact of the homicide itself or if there were no just grounds for the killing or when the killing was without provocation or upon so slight a provocation as not to justify the killing.
After the trial court delivered this charge, defense counsel contended that this instruction amounted to presumption. The trial court rejected this contention on the basis that it was merely a permissible inference as opposed to a presumption.
In the case of State v. Motton, 395 So.2d 1337 (La.1981), Specific Intent was defined, as follows:
"La.R.S. 14:10(1) defines specific intent as follows:
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
La.R.S. 15:445 reads in part, as follows:
In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
In State v. Williams, 383 So.2d 369, 373 (La.1980) this Court said:
Specific intent is a state of mind and as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. Thus, charging the victim in a threatening manner and trying to get at him with a knife over a bar as (has) been found to be evidence of specific intent to kill. State v. Garner, 241 La. 275, 128 So.2d 655 (1961). Likewise, the pointing of a gun at the victim as it was fired has been ruled evidence of a specific intent to kill. State v. Procell, 365 So.2d 484 (La.1978)."
It would have been better to charge the jury that an intent to kill or to inflict great bodily harm may be inferred from the facts and circumstances of a homicide rather than from the homicide itself. The jury should not be permitted to believe that just because someone is killed, the law regards it as a reasonable inference that someone intended to harm him. But in the circumstances of this case, the charge could not do harm. Where it has been shown beyond a reasonable doubt that the defendant beat the victim with his fists so that she died, the intent to commit great bodily harm is inescapable.
This assignment lacks merit.
The conviction is affirmed.
AFFIRMED.
CALOGERO and DENNIS, JJ., dissent with reasons.
*7 CALOGERO, Justice, dissenting.
The jury charge was not a proper statement of the law. There is no implication or presumption under the law, mandatory permissive or otherwise, such as was charged this jury. Specific intent (to kill or cause great bodily harm) may not be implied, or presumed, because of the mere fact of occurrence of a homicide.
DENNIS, Justice, dissenting.
I respectfully dissent. The introduction of the other crimes evidence cannot be justified on the grounds stated by the majority. The jury instruction on specific intent was so misleading it could have wrongfully contributed to defendant's conviction.
NOTES
[*] Judges Shortess, Carter and Savoie of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, joined by Associate Justices Calogero, Marcus and Dennis.