Dear Senator Robichaux:
You have requested from this office an opinion regarding the rights of affected parties to seek compensation from public officials for harm caused by the alleged failure of such officials to properly address dangerous conditions over which they exercise regulatory authority. Specifically, you indicate concern that your constituents in the southern part of Lafourche Parish are suffering "objective and rather serious medical problems as the result of the presence of an oil field waste facility in their community"; and question the potential liability of environmental officials for damages which may be sustained as a result of the operation of such facility.
You have also questioned whether it is "permissible" for environmental officials "to allow a continuation of activities which are harmful" to your constituents, and indicate your desire and intention to "write legislation to correct this injustice" if there is "currently no legal remedy to correct this problem." I assume the harm you reference consists of those "objective and rather severe medical problems" which you attribute to the operation of the waste disposal facility in your district.
Because this office must defend public officials who are defendants in lawsuits brought against them for harm allegedly caused by their acts or omissions, it would be inappropriate and improper to provide herein an answer which may affect the Attorney General's obligation under law to defend such officials. However, as Attorney General and chief legal officer for the State of Louisiana, I also have a duty to provide legal assistance to members of the Legislature on matters that relate to their duties when I am requested to do so. Considering the serious and compelling nature of the issues you have raised in regard to the sufficiency of Louisiana's environmental regulatory scheme and your stated intention to introduce legislation to correct any deficiencies which may exist — and in light of the tremendous effort which has been expended by the drafters of our constitutions, the Legislature and the courts establishing a constitutional, statutory, and regulatory basis and framework for protection of public health and the environment — I believe it is appropriate and proper that I provide you with some general guidance derived from the leading Louisiana Supreme Court case which addresses environmental regulation in Louisiana.
Therefore, and with the caveat that nothing herein should be construed as any admission of liability for any specific act or omission by any public official in connection with any specific regulated facility, I direct your attention to the Louisiana Supreme Court's opinion in Save Ourselves v. LouisianaEnvironmental Control Commission, 452 So.2d 1152 (La. 1984), wherein the constitutional standard of environmental protection — as well as the goal, purpose, and mission of environmental regulation — is outlined in illuminating clarity by Louisiana's highest court.
In Save Ourselves, the Louisiana Supreme Court reviewed a decision of the existing environmental agency (the Environmental Control Commission) to issue permits allowing construction and operation of a hazardous waste disposal facility. In remanding the permitting decision back to the environmental agency for further proceedings, the court provided in its decision a treatise on environmental law and its proper implementation in Louisiana which continues to serve as our primary jurisprudential authority.[1]
The Court, in considering whether the environmental agency properly exercised its power and authority, quoted the command of Article IX, Section 1 of the Louisiana Constitution, which provides:
 The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety and welfare of the people. The legislature shall enact laws to implement this policy.
Elaborating on the command of Article IX, Section 1 of the Louisiana Constitution, the court concluded:
 A public trust for the protection, conservation, and replenishment of all natural resources of the state was recognized by Article VI, Section 1 of the 1921 Louisiana Constitution. The public trust doctrine was continued by the 1974 Louisiana Constitution which specifically lists air and water as natural resources, commands protection, conservation and replenishment of them insofar as possible and consistent with health, safety, and welfare of the people, and mandates the legislature to enact laws to implement this policy. Save Ourselves, 452 So.2d at 1154.
Discussing the constitutional basis, history, and purpose of the statutory scheme enacted by the Legislature in accordance with the express command of Article IX, Section 1 of the Louisiana Constitution, the court stated:
 In implementation of the public trust mandate, the legislature enacted the Louisiana Environmental Affairs Act the stated purpose of the act is to maintain, protect and enhance a healthful and safe environment through regulation of water control, air quality, solid and hazardous waste, scenic rivers and streams, and radiation, as well as to provide for comprehensive policies on a statewide basis to unify, coordinate, and implement programs for these purposes and for the most advantageous use of the resources of the state. Id.; R.S. 30:2002(1).
Further elaborating on the command of the Louisiana Constitution in regard to natural resource protection, the Supreme Court held:
 In summary, the Natural Resources article of the 1974 Louisiana Constitution imposes a duty of environmental protection on all state agencies and officials, establishes a standard of environmental protection, and mandates the legislature to enact laws to implement fully this policy. Save Ourselves, 452 So.2d 1154, 1155.
Describing the mission of environmental agencies, the court stated:
 The constitutional-statutory scheme implies several other important principles. Since the [Department of Environmental Quality] in effect, has been designated to act as the primary public trustee of natural resources and the environment it necessarily follows that the agency must act with diligence, fairness and faithfulness to protect this particular public interest in the resources.
 * * * The [Department of Environmental Quality's] role as the representative of the public interest does not permit it to act as an umpire passively calling balls and strikes for adversaries appearing before it; the rights of the public must receive active and affirmative protection. Save Ourselves, 452 So.2d 1157.
In regard to implementation of the environmental constitutional — statutory scheme by environmental agencies and public officials, the court found:
 The environmental protection framework vests in the commission a latitude of discretion to determine the substantive results in each particular case. Environmental amenities will often be in conflict with economic and social considerations. To consider the former along with the latter must involve a balancing process. In some instances environmental costs may outweigh economic and social benefits and in other instances they may not. This leaves room for a responsible exercise of discretion and may not require particular substantive results in particular problematic instances.
Commenting further on the actions of the environmental agency in light of the constitutional standard outlined by the court in regard to natural resource protection, the court concluded:
 From the present record we cannot tell whether the agency performed its duty to see that the environment would be protected to the fullest extent possible consistent with the health, safety and welfare of the people.
 * * * From our review, it appears that the agency may have erred by assuming that its duty was to adhere only to its own regulations rather than to the constitutional and statutory mandates. Save Ourselves, 454 So.2d at 1160.
The Louisiana Constitution commands that the natural resources of the State — including air and water — be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The Environmental Quality Act clearly states that the purpose of the act is "to maintain a healthful and safe environment through regulation of water and air quality;" and the Louisiana Supreme Court has instructed that "the rights of the public must receive active and affirmative protection" at the hands of environmental regulators who "must act with diligence, fairness and faithfulness to protect [the] public interest" in a safe and healthful environment. Louisiana Constitution, Article IX, Section 1; La. R.S. 30:2002(1); Save Ourselves, 454 So.2d 1157.
If regulatory tools available to environmental agencies are not sufficient to address demonstrable threats to public health and safety posed by a regulated facility — if a facility otherwise fully in compliance with statutory and regulatory conditions continues to constitute a demonstrable threat to public health and safety — it is then incumbent upon the legislature to enact effective regulatory tools in the form of statutes or enabling legislation which will provide for that degree of protection of public health and safety commanded by the Louisiana Constitution and the Louisiana Supreme Court. The constitutional mandate regarding protection of public health and safety from environmental threats extends to the legislature as well as to environmental agencies and officials. Louisiana Constitution, Art. IX, Sec. 1.
I hope the language quoted herein from the leading Supreme Court case in regard to environmental protection in Louisiana sheds some light on the concerns you have expressed with regard to the health and safety of your constituents. I look forward to meeting with you personally in a setting which will provide an opportunity for me to discuss the issues raised in your letter of December 28 in more detail.
Very truly yours,
 BY: __________________________ RICHARD P. IEYOUB Attorney General
RPI/JBS/jb
[1] Please note that Save Ourselves does not address nor does it involve any issue of liability of any public official in connection with any act or omission.