364 So.2d 570 (1978)
STATE of Louisiana
v.
William MONROE.
No. 62000.
Supreme Court of Louisiana.
November 13, 1978.
*571 A. J. Boudreaux, Indigent Defender Board, 24th Judicial District, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Robert A. Pitre, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.
In this case we consider whether evidence of a similar offense by the accused, offered to negative serious contentions of self defense and lack of criminal intent raised by his confession and insanity plea, was properly admitted to prove his intent to commit the charged crime, under circumstances indicating conclusively that the accused had done the act.
Defendant, William Monroe, pleaded not guilty and not guilty by reason of insanity in response to a bill of indictment charging him with second degree murder, La.R.S. 14:30.1. The defendant was convicted by a jury of manslaughter, La.R.S. 14:31, and sentenced to twenty-one years imprisonment at hard labor. On appeal defendant filed a brief presenting three arguments in support of seven assignments of error.[1]

Evidence of Similar Offense to Negate Self Defense and Lack of Intent
The defendant was charged with the second degree murder of Ulysses Martin, an elderly white male whose body was discovered July 31, 1976 on the river batture near the 500 block of First Street in Gretna, Louisiana, a known haunt for reputed derelicts and winos. Martin, who died as the result of asphyxia due to strangulation, also had a fracture of the right second rib and *572 multiple bruises of both hands. Abrasions on the dead man's neck could have been caused by rope, wire, fingernail or a similar object.
The similar offense, of which evidence was introduced over defendant's objection, was the killing of Arnold Leschinsky, an elderly white male whose body was discovered in the same area on the following day, August 1, 1976. Leschinsky also died of strangulation and also had multiple bruises across both hands as well as a broken tooth. Abrasions on his neck could have been caused by an object similar to that used in the Martin strangulation.
The defendant admitted to police officers that he had killed both men but he claimed in his statements that he acted in self defense after being attacked on both occasions. His statements relating to both homicides were admitted into evidence at trial. The defendant introduced the testimony of a psychiatrist who expressed the opinion that, although Monroe could distinguish between right and wrong at the time of the offenses, he suffered from significant mental impairment and possibly paranoid schizophrenia.
The defendant contends that the evidence of the similar offense should have been excluded because it did not show sufficient probative value to outweigh its prejudicial effect.
Because the introduction of evidence of other acts of misconduct involves substantial risk of grave prejudice to a defendant, evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions. State v. Prieur, 277 So.2d 126 (La. 1973). The general rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a possibility that he committed the crime on trial because he is a man of criminal character. State v. Sutfield, 354 So.2d 1334 (La.1978). One of the other purposes for which such evidence may be relevant is to show, by the similar offense, that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. McCormick on Evidence, § 190 at p. 450 (Cleary ed. 1972); La.R.S. 15:455, 456. However, in order for such evidence to be admissible to prove intent, or for another permissible purpose, there must be a real and genuine contested issue of intent at trial; State v. Nelson, 357 So.2d 1100, 1103 (La.1978); State v. Prieur, supra, and the probative value of the evidence must outweigh its prejudicial effect. State v. Sutfield, supra, State v. Prieur, supra.
The reasons underlying the exception for proof of intent when genuinely at issue and the prerequisites to its application were set forth by Wigmore, who observed:
"To prove Intent, as a generic notion of criminal volition or wilfulness, including the various non-innocent mental states accompanying different criminal acts, there is employed an entirely different process of thought. The argument here is purely from the point of view of the doctrine of chances,  the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process or reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.
"* * *
"* * * A. In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defence or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not *573 certainly) the presence of the normal, i. e., criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offence according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent. * * *
"* * *
"It will be seen that the peculiar feature of this process of proof is that the act itself is assumed to be done,  either because (as usually) it is conceded, or because the jury are instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent. This explains what is a marked feature in the rulings of the Courts, namely a disinclination to insist on any feature of common purpose or general scheme as a necessary requirement for the other acts evidentially used. It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand.
"Yet, in order to satisfy this demand, it is at least necessary that prior acts should be similar. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. * * *
"In short, there must be a similarity in the various instances in order to give them probative value,  as indeed the general logical canon requires (ante, § 33)." 2 Wigmore on Evidence, § 302 (3d ed. 1940).
Applying the relevant principles to the instant case we conclude that the trial judge properly invoked the exception and allowed the introduction of the similar offense evidence to negate self defense and lack of intent. There was little if any doubt that the defendant had killed Ulysses Martin. However, a real and genuine issue as to his specific intent to kill or cause great bodily harm, which the State had the burden of proving, La.R.S. 14:30.1, was raised by the evidence of self defense and insanity. The evidence of the subsequent act, which was strikingly similar, had great probative value to show the improbability that the defendant acted in self defense or without requisite intent in strangling two derelicts on successive nights at the same spot on the river batture.[2]
Defendant further contends that the trial court erred in not allowing a full evidentiary hearing before admitting evidence of the similar offense. However, the State submitted the autopsy reports and defendant's confessions to the judge who reviewed them out of the jury's presence. Hence, there was an adequate "foundation laid, out of the jury's presence, to show the admissibility of the evidence." State v. Ghoram, 290 So.2d 850, 852 (La.1974).

Other Issues Argued
We have reviewed the record in this case in light of the defendant's two other arguments and find that none of his remaining assignments of error have reversible merit.
Defendant contends that the trial judge erroneously restricted his attorney's cross-examination of the police officer who requested that the defendant come with him to City Hall for questioning. The officer testified that without arresting the defendant or advising him of his rights he asked the defendant "if he'd mind accompanying me to City Hall and he said he would." The officer was then asked questions *574 apparently designed to determine what action the officer would have taken if the defendant had refused his request. The trial judge sustained an objection by the State on the ground that the question was speculative. We cannot say that the judge's interpretation of the questions or his ruling was incorrect. Although the defendant did not contend that his confession was tainted as the product of an unlawful arrest, See, Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), his right to confront and cross-examine the officer who initially approached him on this issue could not have been properly curtailed at trial. However, taken in the context of the many other questions pertaining to the encounter that defense counsel successfully put to the officer, the ruling of the trial judge did not impinge on defendant's right to cross examine. The particular question objected to appeared to be part of an attempt to discover what the officer would have done if the defendant had refused to accompany him to City Hall. Since the defendant actually complied with the officer's request, the evidence which would have been elicited by this type of question was irrelevant. Defense counsel was not hindered to any extent in addressing questions to the officer that were clearly designed to determine the actual circumstances surrounding the defendant's agreement to accompany the officer to City Hall.
In his final argument the defendant correctly points out that the trial judge erred in his refusal to instruct the jury that a second-degree murder conviction requires the trial judge to impose a mandatory life sentence. The trial court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than the judge. State v. Milby, 345 So.2d 18 (La.1977). Nevertheless, the error in the instant case probably did not result in a miscarriage of justice, prejudice to the substantial rights of the accused, or constitute a substantial violation of a constitutional or statutory right. La.C. Cr.P. art. 921. The jury here in fact returned the less serious verdict of manslaughter, which does not require a mandatory penalty.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
NOTES
[1] Seven additional assignments are considered to have been abandoned because of the lack of supporting written or oral arguments.
[2] The similar acts used to negate inadvertence, defensive purpose, or any other form of innocent intent may have been done at a time subsequent to the charged offense. See, 2 Wigmore on Evidence, § 363 (3d ed. 1940).