839 So.2d 932 (2003)
STATE of Louisiana
v.
Joe GALLIANO.
No. 2002-KK-2849.
Supreme Court of Louisiana.
January 10, 2003.
Dissenting Opinion January 24, 2003.
Dissenting Opinion by Calogero, C.J., January 24, 2003.
PER CURIAM.
The defendant is charged with second degree cruelty to a juvenile, a violation of LSA-R.S. 14:93.2.3. The charge arises out of an incident in which the two-year-old victim, while in defendant's care, sustained serious brain injury consistent with shaken baby syndrome. The State filed a "Notice of Intent to Use Evidence of Other Crimes, Wrongs, or Acts" seeking to introduce evidence that, approximately four months prior to the head injury, the victim sustained a broken leg when defendant applied excessive force to extricate him from a car seat.
The district court conducted a hearing consistent with State v. Prieur, 277 So.2d 126 (La.1973). The State introduced a copy of a "Care Center Forensic Report" prepared by Dr. Scott A. Benton in connection with the leg injury and the transcript of the testimony at a hearing conducted in juvenile court. At the juvenile court hearing, defendant acknowledged that the victim suffered a broken leg when he attempted to extricate the victim from his car seat. In district court the State argued that the evidence of the prior leg fracture is admissible at defendant's trial arising out of the head injury to prove knowledge, identity and absence of mistake or accident. The district court agreed, ruling that evidence of the prior incident which resulted in a spiral fracture to the victim's femur is admissible at defendant's trial because it has independent relevance to the issues of intent, system and absence of mistake or accident.
*933 The defendant applied to the Court of Appeal, Fifth Circuit, for writs. On October 25, 2002, the court of appeal granted defendant's writ application and reversed the ruling of the district court. The court of appeal ruled that the evidence of defendant's prior bad act is inadmissible because the prior act is not similar to the current charge, does not prove a material fact at issue, has no independent relevance other than showing that the defendant is of bad character, and lacks probative value that outweighs its prejudicial effect.
Because defendant's trial was scheduled to begin on December 2, 2002, the State applied to this court for writs of certiorari from the judgment of the court of appeal and a stay of further proceedings. We granted the State's application for a stay, and now, for the reasons expressed below, we reverse the decision of the court of appeal and reinstate the district court's ruling finding the other acts evidence admissible.
As a general rule, courts may not admit evidence of other crimes, wrongs or acts of the defendant in order to show that he or she is a person of bad character who has acted in conformity therewith. LSA-C.E. art. 404(B)(1). However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason for its admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. LSA-C.E. art. 404(B)(1). The State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. State v. Prieur, 277 So.2d at 130. Additionally, the State must prove that the defendant committed the other acts.[1]Id. Finally, the probative value of the other crimes, wrongs or acts evidence must outweigh its prejudicial effect. LSA-C.E. art. 403; State v. Hatcher, 372 So.2d 1024, 1033 (La.1979).
In the instant case, the district court conducted the requisite Prieur hearing at which the State introduced evidence that the defendant committed the prior act sought to be introduced into evidence. In the transcript of defendant's testimony at the juvenile court hearing conducted in connection with the prior incident, the defendant acknowledged that the victim suffered a fracture of his femur when defendant attempted to pull him out of his car seat, but defendant claimed that the incident was an accident. The State argued that the evidence of this prior incident has independent relevance to establish knowledge, identity, and absence of mistake or accident in connection with the current incident. According to the State, the evidence is admissible to negate defendant's contention that while he did shake the victim, he did not intend, nor did he shake the victim hard enough, to cause the severe head injury the victim sustained. The defendant argued that the evidence of the prior incident is not admissible because it is not similar to the incident for which defendant is being tried, has no probative value, and is designed solely to inflame the jury.
After weighing the evidence and arguments of counsel, the district court concluded that the evidence of the prior incident *934 has independent relevance to the issues of intent, system, and absence of mistake or accident and is admissible. We find no abuse of discretion in that determination. See, State v. Stepp, 28,868 (La.App. 2 Cir. 12/11/96), 686 So.2d 76, 79, writ denied, 97-0410 (La.6/30/97), 696 So.2d 1006 (trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion).
The district court properly invoked the exception in LSA-C.E. 404(B)(1) and allowed the introduction of the other acts evidence to negate defendant's claims of accident, mistake and lack of intent. The evidence of the prior incident in which the victim sustained a broken femur when defendant pulled him forcefully from his car seat has probative value to show the improbability that the defendant acted without the requisite intent, or accidentally, when he, according to his own admission, shook the victim in the instant situation "to get his attention." See, State v. Monroe, 364 So.2d 570 (La.1980) (under doctrine of chances, likelihood that defendant was required to kill twice in self defense on successive nights at the same location was so remote that evidence of the other killing was admissible to negate self defense and lack of intent). Under the particular circumstances of this case, although evidence of the prior incident is clearly prejudicial, we cannot say that it is so inflammatory as to create an unacceptable risk of luring jurors "into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997). The court of appeal erred in holding to the contrary.
Accordingly, the writ is granted, the judgment of the court of appeal is reversed, and the judgment of the trial court finding the other crimes, wrongs or acts evidence to be admissible is reinstated. The stay order, previously issued by this court is lifted, and the case is remanded to the district court for further proceedings consistent with this opinion.
CALOGERO, C.J., dissents and will assign reasons.
CALOGERO, Chief Justice, dissents.
I respectfully dissent from the majority's decision to summarily reverse the court of appeal decision with a Per Curiam disposition. I believe the issue in this case is sufficiently close that this court should grant the writ and invite the parties to brief and argue the case, followed by an authored opinion.
The majority employs a "doctrine of chances," which was used in State v. Monroe, 364 So.2d 570 (La.1978), to find that the likelihood that the defendant was required to kill twice in self defense on successive nights at the same location was so remote that the evidence of the other killing was admissible to negate self defense and lack of intent. The majority concludes that the "doctrine of chances" likewise applies to this case because the likelihood that the defendant would accidentally cause injury to the same child on two separate occasions is also remote. However, I believe that the application of the doctrine to the instant case is much more equivocal than its application in Monroe.
In the instant case, the defendant admitted that the child previously suffered a spiral fracture to his leg when the defendant tried to extricate him from a car seat. The defendant has now been charged with second degree cruelty to a juvenile because, while in the defendant's care, the same child suffered brain damage consistent with shaken child syndrome. Unlike the two acts at issue in Monroe (killing two assailants allegedly in self defense), the prior event in this case (spiral leg fracture to the child or infant), is not similar to the injury in question *935 (brain damage consistent with shaken child syndrome). Moreover, there is no evidence indicating that the defendant had a particular animus toward the child or that the defendant regularly abused the child. In the absence of such evidence, I do not believe that the "doctrine of chances" necessarily supports an assumption that the defendant intentionally harmed the child when he shook him simply because he had previously been involved in an event which caused harm to the child under different facts. The evidence in this case as easily supports a suggestion that the defendant is a crude ruffian when handling children, as it supports a suggestion that the defendant intended to harm the child on two disparate occasions.
The issue in this case is sufficiently close to warrant a grant in order to allow the parties to brief and argue their positions. However, to reverse summarily results in a somewhat high handed removal of a ruling of the court of appeal in favor of the defendant.
More and more frequently, this court has been performing the function of district court judges, making interlocutory rulings that govern forthcoming trials. Such rulings are more likely than not issued by a court majority perhaps not as informed as the trial judge, certainly not as informed as the trial judge regarding the facts, even if equally well-informed regarding the applicable law.
To my mind, this is a distortion of the customary procedure in connection with appellate review. This practice of summary disposition, as opposed to hearing argument and issuing an authored opinion, seems more and more prevalent in recent years. Consider, for example, some recent interlocutory rulings of this court: State v. Lavigne, 821 So.2d 486 (La.7/25/02); State ex rel. Thibodeaux v. State, 01-2510 (La.3/8/02), 811 So.2d 875; State v. Fedison, 01-2736 (La.2/8/02), 807 So.2d 834; Yarnell v. Crews, 01-2523 (La.12/14/01), 803 So.2d 979; Norbert v. Loucks, 01-1229 (La.6/29/01), 791 So.2d 1283; State v. Johnson, 00-2406 (La.1/12/01), 778 So.2d 546.
It is, of course, not beyond the jurisdictional authority of this court, which has supervisory authority over all of the other courts under La. Const. Art. 5, § 5(A), to substitute our judgment for that of a trial judge. State v. Wimberly, 414 So.2d 666, 670 (La.1982). "The constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court." Id. Nonetheless, micro-managing the district court by use of our supervisory authority is a practice that should infrequently, or rarely, be utilized.[1]
NOTES
[1] As to the requisite burden of proof, we noted in State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916, 920 n. 5 that Article 1104 of the Louisiana Code of Evidence was added in 1994 to provide that "the burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." We need not reach the issue of the applicable burden of proof in this case, because we find that the State satisfied its burden under either the clear and convincing evidence standard or the preponderance of the evidence standard.
[1] In Wimberly, we recognized that our supervisory authority should be exercised in limited instances:

In practice, however, certain limitations upon the use of this power are recognized by this court out of respect for the independence of other courts in the determination of questions confided to their judicial discretion, and to avoid usurping merely appellate jurisdiction not conferred upon us by the constitution. [Tate, Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul.L.Rev. 429 (1964); Comment, Supervisory Powers of the Supreme Court of Louisiana over Inferior Courts, 34 Tul.L.Rev. 165 (1959).] We have generally restricted the use of supervisory jurisdiction to those cases "where there is a clear usurpation of power not confided by law, or a refusal to perform some duty plainly imposed by law, and which [the lower courts] have no discretion to refuse, and when there is an entire absence of other adequate remedy." State ex rel. City of New Orleans v. The Judge of the Sixth District Court, 32 La.Ann. 549 (1880).
414 So.2d at 670.