PEATROSS, J.
11 Defendant, Willie Reed, was convicted of Second Degree Murder in violation of La. R.S. 14:80.1 and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.

FACTS

On June 18, 2006, Defendant shot Alicia Hargrove, who had been his girlfriend for two or three months. Ms. Hargrove died from the gunshot wound approximately 15 hours after she was shot.
Ms. Hargrove and Defendant had known each other for some time prior to June 18, 2006, having met through Defendant’s sister, Elizabeth Reed, with whom Ms. Har-grove had grown up and gone to school. At the time of her death, Ms. Hargrove was 31 years old and was employed as a respiratory therapist at Willis-Knighton Hospital in Bossier City. She lived with her two daughters, Raven and Ralicia Har-grove, in a house located on Forest Oak in Shreveport.
On Friday, June 16, 2006, Ms. Har-grove’s father, Louis Hargrove, came into town for a surprise visit. Mr. Hargrove had recently retired from the Air Force and lived in Germany, so he had not seen his daughter in two or three years. On the morning of June 18, Mr. Hargrove was sleeping on the sofa in Ms. Hargrove’s living room. Mr. Hargrove testified that his daughter woke him to tell him that she needed to go to work and that his car was blocking her car. Mr. Hargrove told her where his keys were so that |?she could move the car. Ms. Hargrove then came back into the house, placed the keys on the table and spoke briefly with her father.
After Ms. Hargrove left the house, Mr. Hargrove fell asleep again, waking to “a loud bang.” Mr. Hargrove testified that, at first, he thought the noise had been caused by a firecracker, but then he realized that it had been a firearm. Mr. Har-grove estimated that it took him five to six seconds to run to the carport. He further testified that, when he opened the door, “the smoke [from the gun’s discharge] was still up under the carport.” Mr. Hargrove saw his daughter to his left, leaning against the wall of the carport. He also saw a black male standing in the carport, but was unable to see whether the man had a gun in his hand. Mr. Hargrove testified that he turned his attention to his daughter and Ms. Hargrove said that she had been shot, at which point the shooter *563 said, “I didn’t shoot her, she’s faking” or “she’s lying.” The man then fled the scene.
Mr. Hargrove ran into the house to get the phone to call 911. When he came back out into the carport, Ms. Hargrove had her cell phone and was also dialing 911. She told the 911 operator that “Willie Reed” had shot her.
Corporal Richard McDonald and Sergeant J.C. Williams of the Shreveport Police Department arrived within minutes of receipt of the 911 call. Corporal McDonald testified that Ms. Hargrove was still coherent when he arrived, and told him that she had been arguing with her boyfriend, Defendant, “and he just shot me.” Ms. Hargrove also gave a brief description that matched Defendant and provided his address. The Shreveport Fire Department then arrived at the scene and immediately | ¡¡transported Ms. Hargrove to the hospital, where she died late that same evening.
Investigators recovered a .40 caliber shell casing from under the carport in the vicinity of where the shooter was standing when he shot Ms. Hargrove.[1] One corresponding bullet hole was located in the washroom door. The bullet had traveled through a door leading off the carport, had exited the carport and struck an air-conditioning unit in the back yard. Investigators were unable to locate the bullet.
Corporal Skyler VanZandt with the Shreveport Police Department’s crime scene investigation unit testified that the irregularity of the bullet hole in the washroom door indicated that the bullet had been “tumbling,” or yawing and spinning end over end, as opposed to traveling in a straight flat line. VanZandt explained that a bullet will tumble after hitting an object, such as a human body.
Dr. Frank Peretti, a forensic pathologist, testified that the bullet entry wound indicated that the bullet had not been tumbling at the time it struck Ms. Hargrove and was not a ricochet. Dr. Peretti further testified that the nature of the entry and exit wounds indicated that Ms. Har-grove had been in a “defensive posture” at the time of the shooting. Dr. Peretti opined that the wound to Ms. Hargrove had been “a distant gunshot wound, probably greater than two feet away” and that the trajectory of the bullet through Ms. Hargrove’s body was “right to left slightly back to front in an upward direction.”
|4CorporaI David Walls, also of the Shreveport Police Department’s crime scene investigation unit, testified that the Shreveport Police Department uses a .40 caliber weapon. Corporal Walls stated that, in order to be fired, a .40 caliber weapon’s slide has to be cocked back and released, and that there is an internal safety mechanism on the guns used by the police department. Corporal Walls further testified that a .40 caliber weapon could be single fire or semi-automatic, both of which require pulling a hammer back in order to fire the weapon, and “[y]ou have safeties you can place on it.” Corporal Walls allowed that it would be possible for a .40 caliber weapon to accidentally discharge. He also noted, however, that “pull pressures” are normally assigned to triggers in order to prevent accidental discharge and that, absent another object having lodged on the trigger (such as a tree branch), an individual would “have to have intent” to pull the trigger of a .40 caliber weapon.[2]
*564 On June 30, 2007, the State gave notice of its intent to introduce evidence of Defendant’s prior acts of domestic violence. The trial court held a La. C.E. art. 404(B) hearing on December 4, 2007. The State asserted that Defendant’s prior acts demonstrated a pattern of violence toward his girlfriends and that this pattern had culminated in the death of Ms. Hargrove; the State asserted that evidence of Defendant’s violent actions was admissible to prove Defendant’s intent. The defense argued that the prior acts were not relevant other than to show Defendant’s bad character, that Defendant’s prior acts had not involved any use of a weapon!sand that the prejudicial nature of the evidence outweighed its probative value. The court ruled that evidence of Defendant’s prior bad acts was admissible to demonstrate absence of mistake or accident.
The State called Christy Stafford as a witness and she testified that she has a child with Defendant. She further testified that, on September 6, 1999, Defendant pushed her, causing her to fall on the ground and bruise her face. Nikisha Joseph, who also has a child with Defendant, testified at trial about a physical altercation with Defendant in which he pulled her hair and prevented her from calling for help. That incident occurred on May 2, 1997. The third woman to testify was Ebony Allen, who also has a child with Defendant. Ms. Allen testified that, on May 18, 2002, while she was pregnant with Defendant’s child, he had forced his way into her residence and punched her twice in the face. Ms. Allen further testified that Defendant had made numerous threats to her, including threatening to “shoot [her] house up” after seeing a strange car parked in Ms. Allen’s driveway.
Ms. Allen’s mother, Janet Scott Roberson, testified as to Ms. Allen’s injuries on the evening of May 18, 2002. Ms. Roberson testified that Ms. Allen had been “bloody all over,” that there had been a trail of blood in her daughter’s residence from the doorway through the living room and the house was “in disarray.” A photograph of Ms. Allen taken by Ms. Roberson on the evening of May 18, 2002, was also admitted into evidence. Detective G. Horton, who had responded to the call from Ms. Allen’s residence on pMay 18, 2002, testified that Defendant admitted to forcing his way into Ms. Allen’s home and punching her several times.
At the conclusion of the trial, as previously stated, the jury found Defendant guilty of second degree murder. Defendant was subsequently sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant timely moved for a post-verdict judgment of acquittal, moving in the alternative for post-verdict judgment of conviction of a lesser included offense of negligent homicide or manslaughter, on grounds that there was insufficient evidence of intent. The trial court denied the motions and this appeal followed.
DISCUSSION
Assignment of Error Number One (verbatim): The verdict of Guilty in this case is based on reversible error where the State could not establish intent and could not rebut the defendant’s claim of accidental discharge of a firearm. The State’s argument that characteristics of the weapon create an inference of specific intent were specious and unfounded because there was no weapon found in this case. The State attempted to shift the burden to the defendant by claiming the victim, who only said Reed shot her, did not say it was an accident.
Defendant argues that the evidence does not support a finding of intent. He em *565 phasizes that the gun was never recovered and cites testimony indicating that the gun could have accidentally fired. Defendant also cites testimony indicating that the bullet had an upward trajectory, arguing that this testimony was consistent with his statement that the gun accidentally discharged as he was pulling it from his waistband. Defendant further Largues that, with the exception of Reed’s testimony,[3] the evidence is silent and, under the law, is insufficient to meet the State’s burden.
The State argues that the evidence sufficiently supports a finding of intent under the applicable law. The State relies on the declaration of Ms. Hargrove that Defendant shot her, the fact that Defendant offered no assistance and fled the scene and the evidence that shows that Defendant fired straight at Ms. Hargrove, rather than accidentally firing. The State emphasizes that there was no evidence of a ricochet and that Ms. Hargrove was in a defensive posture when Defendant shot her.
The charge of second degree murder requires “specific intent to kill or to inflict great bodily harm.” La. R.S. 14:30.1. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:30.1. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731, writ denied, 04-2645 (La.2/18/05), 896 So.2d 30; State v. Brooks, 36,855 (La.App.2d Cir.3/5/03), 839 So.2d 1075, writ denied, 03-0974 (La.11/7/03), 857 So.2d 517.
|RIntent is a question of fact. State v. Durden, 36,842 (La.App.2d Cir.4/9/03), 842 So.2d 1244, writ denied, 03-1350 (La.11/26/03), 860 So.2d 1131. It is not necessary that intent be proved as a fact; it may be inferred from the circumstances. Id. Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. Id.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s *566 decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, unit denied, 07-1209 (La.12/14/07), 970 So.2d 529; State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, wit denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, writ denied, 07-2053 (La.3/7/08), 977 So.2d 896; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, unit denied, 98-2723 (La.2/5/99), 737 So.2d 747.
 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566 and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, however, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,-981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678. See also State v. Johnson, 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
Again, the evidence established that Ms. Hargrove was in a defensive posture at the time of the shooting and that the bullet did not ricochet off of any other object or surface prior to hitting her, indicating a straight-on shot. Mr. Hargrove testified that Defendant fled the scene immediately, which further allows for an inference of guilt. Testimony was introduced to the effect that .40 caliber weapons generally have a trigger pull weight which greatly reduces the chances of accidental discharge and that, generally, an individual has to have intent to pull the trigger of a .40 caliber weapon. Finally, Ms. Hargrove stated that Defendant “just shot me.” This evidence as a whole indicates that the gun was not discharged by accident.
Viewing the evidence in the light most favorable to the prosecution, it the trier of fact could have rationally inferred the specific intent of Defendant from the circumstances of this case and, therefore, could have found that the evidence negated reasonable doubt as to Defendant’s intent. Thus, we find that the evidence was sufficient to support the jury’s conclusion on intent.
| nAssignment of Error Number Two (verbatim): The “Other Crimes” evidence introduced in this alleged shooting case was improper because it consisted of arguments between Reed and prior girlfriends, and was not similar to this ease. The *567 evidence merely indicated that Reed had fathered three children out of wedlock and battered one of them when she was pregnant. This case did not involve any battery, and there were no claims of prior domestic violence.
Defendant argues that, under the applicable law, evidence of his previous batteries on three former girlfriends was improper because there was no evidence of previous battery against the victim and no evidence of use of a gun against the former girlfriends.
The State counters, submitting that the element of intent was at issue and that Defendant’s prior acts were properly admitted. The State argues that Defendant’s prior acts need not necessarily be similar in order to be admissible and that these acts demonstrated his propensity for sudden and unjustifiable violence against women.
Generally speaking, evidence pertaining to a defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove the defendant’s character and thus his subsequent disposition to break the law. La. C.E. art. 404(B); State v. Harrison, 604 So.2d 583 (La.1992); State v. Humphrey, 412 So.2d 507 (La.1981); State v. Wright, 94-682 (La.App. 5th Cir.1/18/95), 650 So.2d 291, writ denied, 96-0855 (La.9/20/96), 679 So.2d 430; State v. Cook, 590 So.2d 720 (La.App. 3d Cir.1991); State v. James, 569 So.2d 135 (La.App. 1st Cir.1990); State v. Felix, 556 So.2d 1317 (La.App. 3d Cir.1990). The underlying rationale is that the prejudicial tendency of such evidence, in that the finder of fact is likely 112to convict because the defendant is a “bad person” regardless of the strength of evidence against him in the case being tried, outweighs the probative value of the evidence. State v. Brown, 318 So.2d 24 (La.1975); State v. Gay, 616 So.2d 1290 (La.App. 2d Cir.1993), unit denied, 624 So.2d 1223 (La.1993); State v. Felix, supra.[4]
Article 404(B) provides an exception to this general rule, allowing that evidence of other crimes or wrongs may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. In order for the evidence to be admissible, however, it must be relevant[5] for a purpose other than to depict the accused as having bad character (and, therefore, having acted in accordance therewith in the instant circumstances); the independent question of intent, knowledge, motive or identity must be a contested question at trial; and the prejudicial impact of the evidence must be outweighed by its probative value. State v. Monroe, 364 So.2d 570 (La.1978); State v. Prieur, 277 So.2d 126 (La.1973); State v. Moore, 278 So.2d 781 (La.1972); State v. Taylor, 37,356 (La.App.2d Cir.9/26/03), 855 So.2d 958, unit denied, 03-3141 (La.3/19/04), 869 So.2d 848; State v. Carter, 97-1096 (La.App. 4th Cir.5/20/98), 713 So.2d 796, unit denied, 98-1538 (La.11/6/98), 726 So.2d 920; State v. Pardon, 97-248 (La.App. 5th Cir.10/15/97) 703 So.2d 50, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207.
*568 In order to comply with due process, the state is required to give pretrial notice of its intent to use evidence of other crimes. State v. Prieur, supra. Prieur also requires that the state show, prior to admission of the evidence, that the evidence is not repetitive or cumulative, serves the purpose for which it is offered and is not pretext for portrayal of the defendant as a person of bad character. Prieur also requires that, at the defendant’s request, the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.
The state must establish that the defendant committed the prior act by a preponderance of the evidence. La. C.E. art. 1104; Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); State v. Langley, 95-2029 (La.App. 4th Cir.9/4/96), 680 So.2d 717, writ denied, 96-2357 (La.2/7/97), 688 So.2d 498; State v. Crawford, 95-1352 (La.App. 3d Cir.4/3/96), 672 So.2d 197, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379. The erroneous admission of other crimes evidence is subject to harmless error analysis. State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141. The test for determining harmless error is whether the reviewing court may conclude the error was harmless beyond a reasonable doubt, State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000), or “whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078,124 L.Ed.2d 182 (1993).
A trial court’s decision regarding admissibility of evidence should not be overturned absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135 (La.1992).
Courts have held that evidence of prior acts of domestic violence is inadmissible when prior acts were not against the victim in the particular charge being brought. State v. Davis, 05-733 (La.App. 5th Cir.2/27/06), 924 So.2d 1096; State v. Morris, 362 So.2d 1379 (La.1978).[6]
On the other hand, in State v. Galliano, 02-2849 (La.1/10/03), 839 So.2d 932, a case cited by the State in the 404(B) hearing in the instant case, the court ruled that evidence of a baby’s previous fractured femur, allegedly broken while the defendant pulled the baby from its car seat, was admissible to show lack of mistake or accident in a trial for second degree cruelty to a juvenile where the defendant had shaken the baby and caused serious brain injury. The State also referred to State v. Monroe, supra. In Monroe, the defendant claimed self-defense against a murder charge; the 11 sdefendant admitted to having killed another person the night before the charged murder, also claiming self-defense. The *569 Monroe court ruled that evidence of the previous murder was admissible to negate the defendant’s claim of self-defense.
In the case sub judice, Defendant’s intent was a contested question at trial as Defendant asserted that the shooting was accidental. The State provided the requisite Prieur notice. The pertinent inquiry, therefore, concerns the admissibility of evidence of Defendant’s prior acts in order to show his intent, or to disprove Defendant’s claim of accident. The question is whether Defendant’s batteries of previous girlfriends tended to show that he would be more likely to intentionally shoot and kill, or cause great bodily harm to, his current girlfriend, and whether the admission of such evidence would be so prejudicial that the jury would be likely to convict Defendant on the basis of his having bad character generally, rather than the evidence against him in this case in particular.
After a review of the transcript of the testimony in the case sub judice, we find no error in the trial court’s admission of the evidence. In any event, we further conclude, however, that any error that may have occurred in admitting this evidence is harmless in light of the other evidence of guilt present in this trial. See Sullivan v. Louisiana, supra.
The testimony as described herein leads us to conclude that the jury’s finding of Defendant’s guilt is “surely unattributable” to any erroneous admission of the evidence of prior bad acts. As discussed in the context of Defendant’s first assignment of error, when viewing the evidence in the l^light most favorable to the prosecution, a rational finder of fact could have weighed the evidence in this case and found that Defendant’s guilt had been proven beyond a reasonable doubt, even absent the testimony of the former girlfriends of Defendant. Thus, we find any error on the part of the trial judge in admitting the testimony regarding Defendant’s prior acts of violence against former girlfriends to be harmless.
This assignment is without merit.
Pro se issue presented (verbatim): Should a person convicted of second degree murder receive the same life sentence as those convicted of the greater crime of first degree murder?
Defendant presents an argument based on the Eighth Amendment, suggesting that the mandatory life sentence for second degree murder is disproportionate to the crime because it is not tailored to the seriousness of the crime and provides the same length of sentence imposed for the greater offense of first degree murder. The fact that the same penalty is a possibility under two different statutes is not unconstitutional. See Parker v. Cain, 445 F.Supp.2d 685 (E.D.La.2006). In Parker, the court explained:
To the extent that petitioner is contending that the possible penalty for first degree murder is no harsher than the penalty for second degree murder, he is flatly wrong. The sole penalty available for second degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.Rev.Stat. Ann. § 14:30.1(B). Although first degree murder is similarly punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, it is also punishable by death. La.Rev. Stat. Ann. § 14:30(C).
Defendant’s argument lacks merit.
| ^CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Willie Reed, are affirmed.
AFFIRMED.

. No gun was recovered.

. Defendant asserted that the shooting was accidental and could have ricocheted off of the floor of the carport.

. Defendant did not testify at trial. He did, however, testify before the Grand Jury and the transcript of Defendant's testimony was admitted into evidence at trial without objection. The assistant district attorney who had presented the case to the Grand Jury testified at trial as to the veracity of the transcript and some of the substance of Defendant's testimony, including his contention that the shooting was accidental.

. The Supreme Court has defined “unfair prejudice” as the suggestion of an improper basis for a decision, explaining that "[t]he term ‘unfair prejudice’, as to a criminal defendant, speaks to the capacity of some con-cededly relevant evidence to lure the factfin-der into declaring guilt on a ground different from proof specific to the offense charged.” Old Chief v. U.S., 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

. Relevant evidence is defined by La. C.E. art. 401 as any evidence which tends to render the existence of any fact which is of consequence to an action’s outcome either more or less probable than it would be without the evidence.

. Courts have admitted evidence of previous domestic violence under the 404(B) exception in instances where the prior acts of violence were against the victim in the particular charge being brought; State v. Welch, 615 So.2d 300 (La.1993), (“[i]n this case, the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant”); and when the prior acts were similar in nature (State v. Rose, 06-0402 (La.2/22/07) 949 So.2d 1236 (evidence that the defendant had brutally stabbed his previous wife to death admitted in trial for murder of tire defendant's subsequent wife); State v. Smith, 41,048 (La.App.2d Cir.6/30/06), 935 So.2d 797 (evidence of the defendant's shooting of a prior boyfriend, which shooting the defendant had claimed was accidental, was admissible in trial for stabbing her current boyfriend, where the defendant also claimed that the stabbing was accidental).