Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,285-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

DERRICK DEWAYNE GLOVER                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 396,680

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
Paula C. Marx

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

GLENN G. CORTELLO
JASON W. WALTMAN
ALEX L. PORUBSKY
CHEYENNE Y. WILSON
Assistant District Attorneys

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Donald E. Hathaway, Jr. presiding. Defendant Derrick Dewayne Glover was convicted of one count of armed robbery and sentenced to 45 years at hard labor without benefits. He now appeals. For the following reasons, we affirm defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On August 21, 2023, Glover was charged by bill of information with one count of armed robbery, in violation of La. R.S. 14:64. The state alleged that he took an item of value belonging to or within the control of the victim, Khadijah Sakin ("Sakin"), while armed with a knife. The date of the offense was July 20, 2019. Glover pled not guilty. On June 5, 2024, the state filed a "404(B) Motion and Notice," stating that it intended to introduce testimony that Glover pled guilty to two attempted armed robberies on July 9, 2009, and on July 27, 2019. The state said in its filing only that it intended to introduce the other crimes evidence "not only to establish intent, knowledge, and absence of mistake or accident, but also to rebut defenses the defendant raised at trial."

Glover was tried on June 10-11, 2024. Prior to the start of trial, the trial court held a hearing, pursuant to La. C.E. art. 404(B), on the admissibility of the other crimes evidence. At the hearing, the state's argument consisted of the following:

> The state is seeking to introduce testimony of Mr. Glover's prior convictions. He is currently charged with armed robbery. He has two prior convictions for attempted armed robbery, one

in Caddo Parish and one in Bossier Parish. I think it's relevant prior conduct and prior bad acts and we're seeking to introduce that information.

Counsel for Glover objected. The trial court asked to read the motion and said, "The state's 404(B) motion will be granted." There was no further argument on the matter, and the case proceeded to trial.

Sakin testified that on July 20, 2019, she was working at Shreveport Cash Advance ("Cash Advance") on Hearne Avenue in Shreveport, Louisiana. She had worked there for about one year before the robbery. The business granted loans and had several repeat customers. Sakin was familiar with those customers' names and faces. Sakin knew Glover, a repeat customer, and identified him in court. She said that Glover was a welder and drove a black Chrysler 300. Glover came to Cash Advance twice on the date of the offense.

Sakin said that there was a button under her work desk that allowed her to unlock the door for customers. From where her desk was located, she was also able to see, via a mirror and window, anyone who walked up to the building from the side or the back. The first time Glover entered the business, he went inside and then left, saying he would return. Sakin said he was wearing a white T-shirt, shorts, and Nike flip-flops/slides with socks.

The second time Glover came to Cash Advance, he parked his Chrysler 300 in the back of the business. Sakin saw Glover walking toward the door; his face was not obscured at that time. She pressed the button to let him in. Glover entered the business, hopped over the counter, and demanded money from her. Sakin said he was wearing the same clothes as before and a welding mask. Glover was also holding a knife. Sakin gave him the money from the register. He stabbed her in her left shoulder and

2

Sakin ran to the back of the business; Glover followed her. Glover then took the safe from the back and fled the scene. Sakin said the only treatment she received for her stab wound was a tetanus shot. A photograph of her wound was admitted.

An investigating officer from the Shreveport Police Department ("SPD") went to Sabre Industries, where Glover worked, and collected his welding mask. The mask was entered into evidence and matched the one used by the assailant in the robbery. The surveillance video of the robbery was entered into evidence and played for the jury. Glover gave a statement to the police, in which he neither admitted nor denied that he committed the robbery. He admitted that he went to Cash Advance on the morning of the robbery and that he drove there in a Chrysler 300. Glover confirmed that the welding mask was his. He also told police that he had money and gambling problems.

Glover's parole officer, Ayleen Cook ("Cook"), testified about his two attempted armed robbery convictions, one of which occurred in Caddo Parish and the other in Bossier Parish. The state questioned her about the name of the offenses to which Glover pled guilty and the dates of his offenses, but it did not elicit testimony from her about the details of the attempted armed robberies. Defense counsel objected to Cook testifying about Glover's Bossier offense because he was not under her supervision for that offense, and she did not have personal knowledge about that case. The court overruled the objection. The bills of information, minutes, and fingerprint attachment sheets for Glover's attempted robbery convictions were admitted. Defense counsel questioned Cook about the dangerous

3

weapons Glover used in his attempted armed robberies as listed on the bills of information; they were a sawed-off shotgun and a firearm.

In its closing argument, the state referenced Glover's prior convictions and said that they were offered to establish motive, preparation, and lack of mistake. The state noted that Glover committed the instant offense on July 20, 2019, and he committed the attempted armed robbery in Bossier Parish on July 27, 2019. The state then said, "And defense counsel made a note that … the first armed robbery was with a sawed-off shotgun and then the Bossier robbery was with a firearm and not a knife, but Derrick Glover was successful in this armed robbery. He had preparation. He had motive. It was not a mistake." No limiting instructions about the other crimes evidence were included in the jury charges.

The jury returned a verdict of guilty as charged. Glover filed a motion for a new trial and a motion for a post-verdict judgment of acquittal. On August 12, 2024, a sentencing hearing was held. The trial court denied both of Glover's post-trial motions. Glover said that he wanted to be sentenced immediately. The court considered the sentencing factors found in La. C. Cr. P. art. 894.1 and sentenced Glover to 45 years at hard labor without benefits, to run consecutively to any other sentence. He was given credit for time served. Glover was informed of his appellate and post-conviction relief time constraints and that his offense was considered a crime of violence. Glover now appeals.

## DISCUSSION

In his assignment of error, Glover contends that the trial court erred in allowing the state to present other crimes evidence because the evidence was dissimilar to the crime for which he was tried, was highly prejudicial,

4

outweighed its probative value, and its admission violated his constitutional rights.

Glover claims that the other crimes evidence admitted at his trial did not reflect the same *modus operandi* as the instant crime and that the attempted armed robbery he committed in Caddo Parish occurred in 2009. He claims that, while his offense committed in Bossier Parish was close in time to the instant offense, the facts of that crime were dissimilar to his instant offense. In the instant offense the perpetrator wore a welding mask, but the evidence submitted about the attempted armed robberies did not provide details that he wore a welding mask or concealed his face. Glover also contends that in the attempted armed robberies the weapons used were firearms, but in the instant offense the perpetrator used a knife.

Glover argues that the evidence of his attempted armed robberies did not assist the jury in finding the robber's identification in this case. Glover contends that presenting the other crimes evidence to the jury was highly prejudicial and served to paint him as a criminal with a bad character. Glover asks this court to vacate his conviction and sentence and remand his case for a new trial.

Courts may not admit evidence of other crimes to show the defendant as a person of bad character who has acted in conformity with his bad character. La. C.E. art. 404(B)(1); *State v. Taylor*, 16-0124 (La. 12/1/16), 217 So. 3d 283; *State v. Colby*, 51,907 (La. App. 2 Cir. 5/30/18), 244 So. 3d 1260, *writ denied*, 18-1256 (La. 3/25/19), 267 So. 3d 596. Evidence of other crimes, wrongs, or bad acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. *Id*. However, the state may introduce such evidence if it

establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1).

The defendant is entitled to notice and a hearing before trial if the state intends to offer such evidence. *State v. Taylor*, *supra*. Even when other crimes evidence is offered for a purpose allowed by Article 404 (B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *Id*. The state cannot rely on a boilerplate recitation of the grounds for admissibility as stated in La. C.E. art. 404(B). *Id*. The state bears the burden of proving, by a preponderance of the evidence, that the defendant committed the other crimes, wrongs, or acts. *State v. Colby*, *supra*.

The district court, in its gatekeeping function, must determine the independent relevancy of the evidence and balance the probative value of the prior bad acts evidence against its prejudicial effects before the evidence can be admitted. *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *State v. Miner*, 17-1586 (La. 1/4/18), 232 So. 3d 551.

A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. *State v. Taylor*, *supra*; *State v. Galliano*, 02-2849 (La. 1/10/03), 839 So. 2d 932; *State v. Parker*, 42,311 (La. App. 2 Cir. 8/15/07), 963 So. 2d 497, *writ denied*, 07-2053 (La. 3/7/08), 977 So. 2d 896. Further, an erroneous introduction of other crimes evidence is subject to harmless error review. *State v. Colby*, *supra*. The test for determining harmless error is whether the reviewing court may conclude the error was harmless beyond a reasonable doubt, *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104,

6

148 L. Ed. 2d 62 (2000), or "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).

We have reviewed this record in its entirety and find that the trial court abused its discretion in ruling that Glover's guilty pleas to attempted armed robbery were admissible evidence under La. C. E. art. 404(B). The Louisiana Supreme Court stated that prosecutors may not rely on a boilerplate recitation of the statute governing admissibility of other crimes evidence. That is precisely what the state did at defendant's 404(B) hearing. The state said Glover's attempted armed robberies were "relevant prior conduct and prior bad acts," solely reciting the language found in La. C. E. art. 404(B) and without offering further argument linking the prior bad acts to the instant offense.

Furthermore, the trial court failed in its gatekeeping function. The court was required to make further inquiries other than to read the state's 404(B) notice and issue its ruling. The fundamental question that the trial court was required to ask regarding the admissibility of the evidence of Glover's prior bad acts was whether the evidence was relevant to fulfill some independent purpose, apart from purely showing that defendant was a bad person. The court had to balance the probative value of the other crimes evidence against its prejudicial effects. The trial court did not fulfill that duty, but rather it read the state's 404(B) notice and ruled that the other crimes evidence was admissible without providing analysis or its reasoning for that ruling. We find that the trial court erred in ruling that Glover's other crimes evidence was admissible because it failed to conduct an adequate 404(B) hearing.

7

We turn next to whether the trial court's error was harmless and whether the jury's verdict was unattributable to the admission of the other crimes evidence. The Cash Advance surveillance video shows a man in a welding mask jump over the counter where Sakin was sitting. The perpetrator held a knife and was wearing a welding mask, a white shirt, grey shorts, and black shoes with socks, as Sakin described. Sakin gave eyewitness testimony that Glover was in the Cash Advance earlier that day and was dressed the same as the robber. Sakin knew Glover as a repeat Cash Advance customer, had seen him several times, knew his profession and what car he drove, and identified him in court as the robber. Sakin also stated that, as Glover approached the Cash Advance building, he was not wearing a mask, and she pushed the button on her desk to unlock the door and let him in because she recognized him. So, Sakin saw Glover's uncovered face, once earlier in the day at Cash Advance, and again, moments before he committed the robbery.

Glover worked as a welder, and the police were able to obtain his welding mask from his workplace, which matched the mask worn by the robber. Glover admitted to visiting Cash Advance earlier in the day, and he did not admit or deny that he committed the armed robbery in his statement to SPD. Sakin's familiarity with Glover and her testimony as the victim and an eyewitness were enough to find him guilty of armed robbery. The jury's verdict was unattributable to the other crimes evidence the state had admitted. We find that the admission of Glover's other crimes evidence without a proper 404(B) hearing was harmless beyond a reasonable doubt and his conviction is sound.

*Errors Patent*

The record was reviewed for errors patent, and none were found.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed.

**AFFIRMED.**