78 So.3d 825 (2011)
STATE of Louisiana, Appellee
v.
Satonia SMALL, Appellant.
No. 46,632-KA.
Court of Appeal of Louisiana, Second Circuit.
November 16, 2011.
*827 Elton B. Richey & Associates, LLC, by Elton B. Richey, Jr., Christopher Hatch, Shreveport, LA, for Appellant.
Charles R. Scott, II, District Attorney, Dhu Thompson, R. Bennett Langford, III, Assistant District Attorneys, for Appellee.
Before BROWN, DREW, and MOORE, JJ.
BROWN, Chief Judge.
Defendant, Satonia Small, was convicted by a unanimous jury of second degree felony murder, that is, an unintended killing that occurred during the perpetration of a felony, in this case, cruelty to juveniles. She was sentenced to the mandatory term of life at hard labor without parole. Defendant has appealed her conviction and sentence. We now affirm.

Discussion
Defendant claims error in that the evidence presented was insufficient to convict, in the admission of substantive evidence of a prior crime, that Louisiana's felony murder provision is unconstitutionally vague, and that a life sentence without benefits was, in this case, excessive.

I. Sufficiency of the Evidence
Defendant first asserts that the evidence was insufficient to prove beyond a reasonable doubt that she was guilty of the second degree murder of her six-year-old daughter, who died as a result of injuries sustained in a fire on a night that defendant left the child, along with her seven-year-old son, at home alone to go drinking with a friend. In particular, defendant claims that the evidence was insufficient to support the underlying felony of cruelty of juveniles.

Applicable Legal Principles
At the time of the fire, January 20, 2008, La. R.S. 14:30.1(A) provided in part that:
Second degree murder is the killing of a human being:

*828 . . .
(2)(a) when the offender is engaged in the perpetration or attempted perpetration of . . . cruelty to juveniles [or] second degree cruelty to juveniles . . . even though (she) has no intent to kill or to inflict great bodily harm.
Under the theory of felony murder as provided in La. R.S. 14:30.1(A)(2), the state is not required to prove that the defendant possessed a specific intent to kill or inflict great bodily harm. This provision defines second degree murder as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including cruelty to juveniles or second degree cruelty to juveniles even though she has no intent to kill or to inflict great bodily harm. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 934, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). Thus, under the explicit language of this provision, specific intent to kill or to inflict great bodily harm is not an essential element of felony murder under La. R.S. 14:30.1(A)(2).
La. R.S. 14:93(A) provides in part that:
Cruelty to juveniles is:
(1) the intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
La. R.S. 14:93.2.3(A)[1] provided that:
(1) Second degree cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child.
(2) For purposes of this Section, "serious bodily injury" means bodily injury involving protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or substantial risk of death.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to sustaining the verdict, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard is now legislatively embodied in La. C. Cr. P. art. 821, and it does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/06/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of any witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, appeal after new sentencing hearing, 45,133 (La.App.2d Cir.04/28/10), 36 So.3d 396, cert. denied, ___ U.S. ___, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.

Evidence Presented at Trial
On January 20, 2008, defendant, a single mother, lived in an apartment in Shreveport, *829 Louisiana, with her two children: a six-year-old daughter, S.S., and a seven-year-old son, J.S. On that date, at approximately 10:00 at night, defendant left the children unattended in their upstairs apartment to visit a friend, Patrina Gay. Defendant drove to Patrina's house; they then drove to a liquor store, bought some vodka, then went back to Patrina's house to drink.
Around midnight, the residents of the apartment beneath defendant's saw a light outside their window; upon investigation, they discovered a fire in defendant's apartment. Ronnie Jackson ran around and warned his neighbors of the fire. As he was doing so, he heard a thump; Jackson then saw that defendant's seven-year-old son had jumped to the ground from the second floor balcony.
Jackson, who realized that defendant's daughter was not outside, ran up the stairs and tried to kick in the front door of defendant's apartment, but the door was locked, and the flames were rising; he was unable to get in to rescue the child. A passing Shreveport police officer, Marcus Hines, stopped at the scene and called for the fire department. Officer Hines and a fellow officer, Steven Plunkett, also tried unsuccessfully to kick in the front door of defendant's apartment.[2]
Firefighters arrived and broke down the apartment door to search for defendant's daughter. The apartment was full of smoke from floor to ceiling. As they were searching, part of the roof caved in, clearing the smoke. The firefighters then found the limp body of the six-year-old child in a back bedroom. Paramedics were unable to revive the child at the scene, so she was transported to the hospital where she was placed on life support.
One of defendant's neighbors called Patrina Gay to tell her that defendant's apartment was on fire. Defendant returned home and was arrested by the police. Defendant was wearing gold-colored "going out" clothes and was visibly intoxicated.
The six-year-old child died on January 25, 2008. Forensic pathologist Frank Peretti performed an autopsy and stated that the cause of death was anoxic encephalopathy with pneumonia, complicating smoke, and soot inhalation. Basically, he explained, the child died from lack of oxygen to her brain caused by smoke inhalation. Without objection, Dr. Peretti testified that, in a fire, children generally run for protection, such as to a bedroom, under the bed or covers, or to a closet or a basement.
Chris Robinson, a Shreveport Fire Department investigator, examined the scene and took a number of photographs which were shown to the jury. Robinson discovered that the fire started on the electric stove top where he found a pot that had melted to the back right burner. Because of the severity of the fire, he was unable to determine what furniture or items had been lost in the fire. Robinson said that out of more than 100 other kitchen fires that he had investigated, there had been only one fatality; according to him, a kitchen fire is not a "fast developing" fire.
A few days after the fire, SPD Detective Farquhar interviewed defendant. Det. Farquhar informed defendant that at that time she was being charged with second *830 degree cruelty to a juvenile and read her Miranda rights to her. Defendant agreed to speak with Det. Farquhar and Detective Patrick McConnell. She explained that she had gone with her friend Patrina to a nearby McDonald's to get something to eat, and they were waiting in line at the drive-thru when the neighbor called to tell her that the apartment was on fire. Defendant said that she had not had anything to drink and had been gone less than 20 minutes when she got the neighbor's call. Defendant told detectives that the children were asleep when she left and that she was not cooking anything on the stove.
The officers then confronted defendant with their knowledge that the state had previously taken her children away because she had left them home alone. They also informed her that her daughter was in a permanent vegetative state. At that point, defendant admitted that she had been at Patrina's house, although she said it had been for no more than an hour, and the children had been asleep when she left. Defendant admitted drinking "two or three cups" of vodka at Patrina's house. Ultimately, defendant described the event as a "horrible, horrible accident."
The state presented evidence of other crimes, wrongs or acts pursuant to La. Evidence Code Article 404(B). The state had provided defendant with pretrial notice of their intent to use this evidence. Over defendant's objection, the court allowed the jury to hear this evidence. Approximately one year prior to this incident, in December 2006, defendant was charged with criminal abandonment of her two children in the Shreveport City Court. She pled guilty in May 2007.
In addition to the fact of defendant's conviction, the jury heard the entire plea colloquy detailing the facts of the previous offense and were shown 8 × 10 photographs of the apartment defendant and her children shared at that time.
In that case, a neighbor had called and told the police that there were children home alone, and that they were outside in 28 degree weather. The 8 × 10 color photos depicted defendant's apartment in an unkempt condition. Shreveport Police Officer Brandon Chandler, who investigated the 2006 complaint, testified that he took the photos and when he arrived at the apartment, both children were inside with no adult present. Chandler testified that the condition of the apartment shocked him, even as a five-year veteran police officer, and he described the apartment as "unhealthy, deplorable, just truly unbelievable." He further testified that defendant did not return home that night until 12:30 or 1:00 a.m., and that the children were removed by Child Protective Services.
During the guilty plea colloquy (in May 2007), the judge asked defendant whether this would ever happen again. Defendant's response was, "Never, never. . . . I promise you that, because I learned a valuable lesson, because my kids is all I got."[3]
Defendant opted not to testify. A unanimous jury convicted defendant of second degree murder.

Analysis
In this appeal we are to consider the offense of second degree murder by means of cruelty of juveniles. In order to prove that defendant committed second degree murder, the state had to show, inter alia, that defendant was committing either second degree cruelty to juveniles *831 or cruelty to juveniles when the child died, and a legal causation between the underlying felony, cruelty to juveniles, and the child's death.
In this particular case, the mental element for both of the underlying cruelty to juveniles offenses was "criminally negligent mistreatment or neglect." No proof of specific or general intent vis-a-vis mistreatment or neglect is required. To prove cruelty under these statutes, the state had to show that the defendant's act or failure to act constituted mistreatment or neglect. There is no requirement of an intent to cause the child unjustifiable pain or suffering (cruelty) or serious bodily injury or neurological impairment (second degree cruelty). See State v. Duncan, 02-0509 (La.App. 1st Cir.09/27/02), 835 So.2d 623, writ denied, 03-0600 (La.03/12/04), 869 So.2d 812.
Criminal negligence is defined in La. R.S. 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
Unlike general or specific criminal intent, criminal negligence is essentially negative, that is, extreme indifference. Rather than requiring the accused intend some consequence of her actions, criminal negligence is found from the accused's gross disregard for the consequences of her actions. State v. Martin, 539 So.2d 1235 (La.1989). Ordinary negligence does not equate to criminal negligence. The state is required to show more than a mere deviation from the standard of ordinary care. State v. Jones, 298 So.2d 774 (La. 1974); State v. Wilcoxon, 26,126 (La. App.2d Cir.06/22/94), 639 So.2d 385, writ denied, 94-1961 (La.12/16/94), 648 So.2d 386, overruled in part on other grounds, State v. Tolbert, 03-0330 (La.06/27/03), 849 So.2d 32.
Comments to La. R.S. 14:93 suggest that the laws governing the jurisdiction of the juvenile court should be consulted to determine what constitutes neglect. Under La. Ch. C. art. 603(14), "neglect" is the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired.
In December 2006, defendant was arrested for leaving these children alone while she went out. At that time, the children were taken by Child Protective Services. In court in May 2007, defendant was informed by the judge that her conduct constituted neglect. Defendant pled guilty and promised the court that it would "never, never" happen again. Defendant understood that she was responsible for the safety and welfare of the children. She understood that leaving these young children unattended and locked in her apartment was neglect that endangered their safety. Yet, less than a year after her conversation with the judge at her guilty plea hearing, she again abandoned these children while she went off drinking with a friend. Her extreme indifference endangered these children by placing them in a situation which exposed them to harm, injury or loss.
A 12-person jury unanimously found defendant guilty of second degree murder. Reviewing the evidence presented at trial, we find that the jury could have reasonably determined that defendant's conduct in leaving her two young children home alone late at night without thought *832 of the potential dangers they could have encountered during her absence, i.e., an intruder or burglar, an injury caused by horseplay between the children, the ingestion of medications or ordinary household poisons or chemicals improperly stored, an emergency caused by inclement weather, or as happened in the instant case, a fire, amounted to a gross deviation below the standard of care expected from a reasonably careful person under like circumstances and therefore constituted criminally negligent neglect which caused unjustifiable pain or suffering (La. R.S. 14:93) and/or serious bodily injury or neurological impairment (14:93.2.3) and which ultimately resulted in her daughter's death. We cannot question the jury's determination on this factual issue.

II. Constitutionality of La. R.S. 14:30(A)(2)
Defendant next argues that Louisiana's second degree felony murder provision is unconstitutionally vague because it does not explicitly include a causation requirement. Defendant argues that the neglect in this case did not create a special danger to human life and could not serve as a predicate to felony murder. Furthermore, according to defendant, there is no distinction between negligent homicide and second degree murder predicated upon criminally negligent cruelty to juveniles.
We conclude that cruelty to juveniles does pose a special danger to human life in the abstract and may properly serve as a predicate to a felony murder charge. Defendant's extreme indifference endangered the welfare and safety of these very young children and defendant should have foreseen the possibility of harm or injury. La. R.S. 14:8 provides that criminal conduct, even when based only on criminal negligence as in the instant case, is conduct that produces criminal consequences. Furthermore, while defendant's conduct may be punishable under more than one criminal statute, prosecution is permitted under any applicable statute. See La. R.S. 14:4. Thus, we must reject this argument.

III. Admissibility of Evidence of Other Crimes, Wrongs, or Acts
Defendant next urges that the trial court abused its discretion by allowing the introduction of substantive evidence of her prior conviction for child abandonment, especially photographic evidence from that prior conviction depicting the bad condition of her previous apartment, as well as testimony describing her prior living quarters.
As a general rule, courts may not admit evidence of other crimes, wrongs or acts of the defendant to show that he or she is a person of bad character who has acted in conformity therewith. La. C.E. art. 404(B)(1); State v. Galliano, 02-2849 (La.01/10/03), 839 So.2d 932, on subsequent appeal, 05-962 (La.App. 5th Cir.08/29/06), 945 So.2d 701, writ denied, 06-2367 (La.04/27/07), 955 So.2d 682. The state may, however, introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason for admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1); State v. Rose, 06-0402 (La.02/22/07), 949 So.2d 1236, on remand, 05-0396 (La.App. 4th Cir.04/13/07), 955 So.2d 270, writ denied, 07-0744 (La.11/02/07), 966 So.2d 601; State v. Galliano, supra.
The state must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. Id.; State v. Prieur, 277 So.2d 126 (La.1973). The state must also prove that the defendant committed the other acts. Id. If the probative *833 value of the other crimes, wrongs or acts evidence is substantially outweighed by the danger of unfair prejudice, then the evidence must be excluded. La. C.E. art. 403; State v. Galliano, supra.
The state provided defendant with reasonable notice of its intent to use evidence of the prior conviction, and a Prieur hearing was held. If not the subject of a conviction, proof of the prior bad acts must be by clear and convincing evidence. As stated above, in this case defendant was convicted. Defendant's argument is that the trial court erred in admitting substantive evidence of her prior conviction, specifically photographs and testimony about the condition of her previous apartment.
After consideration of the evidence and arguments of both attorneys, the trial court determined that the evidence of the prior incident was admissible to establish intent, knowledge, and absence of mistake or accident. We find no abuse of discretion in this ruling. The evidence of the prior incident of abandonment, including the plea colloquy and the photographs of defendant's cluttered and dirty apartment, demonstrates a history of neglect. It has value to show the improbability or unlikelihood that defendant acted unknowingly or by mistake or accident when she neglected her parental responsibilities and left her two children asleep in a locked apartment to go drinking with a friend. See State v. Galliano, supra.
Further, we note that child abuse and neglect differs from other crimes in that it is done in secret, in the privacy of a home, and against a child too young to call for help. Such neglect is usually not confined to one instance but is likely to be part of a systematic pattern. A pattern, plan or scheme of neglect is relevant and admissible as other crimes, wrongs, or acts evidence.
While this evidence was prejudicial, we cannot say that its probative value was outweighed by the prejudicial effect the evidence posed, i.e., this evidence did not rise to the level of undue or unfair prejudice when balanced against its probative value. See State v. Rose, supra.

IV. Trial Court's Failure to Depart Downward from Mandatory Life Sentence
According to defendant, the trial court erred when it refused to deviate downward from the mandatory life sentence provided for second degree murder. In light of her particular circumstances and this offense, defendant urges that the mandatory life without parole sentence is constitutionally excessive.
Mandatory sentences under La. R.S. 14:30.1 have been consistently upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment. State v. Woods, 44,491 (La.App.2d Cir.08/19/09), 16 So.3d 1279, writ denied, State v. Scott, 09-2084 (La.04/09/10), 31 So.3d 380; State v. Wright, 42,956 (La.App.2d Cir.03/05/08), 978 So.2d 1062, writ denied, 08-819 (La.10/31/08), 994 So.2d 532. A court may depart from a mandatory minimum sentence only if it finds that the defendant presented "clear and convincing evidence" to rebut the presumption of constitutionality, which requires a showing that she is exceptional, i.e., "because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, 676, quoting State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, *834 95-3010 (La.03/22/96), 669 So.2d 1223 (Plotkin, J., concurring).
We find, as did this court in State v. Woods, supra, that the gravity of the instant offense and the culpability of defendant, who had a prior conviction for child abandonment for leaving her young children unsupervised to go out with a friend, warrants no downward departure from the legislatively mandated life sentence. This assignment of error is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
MOORE, J., concurs.
I respectfully concur in the majority's result, but I differ with its treatment of the third assignment of error. The district court erred in admitting into evidence photographs showing the "deplorable" condition of Ms. Small's apartment in December 2006, when she was arrested for conduct that resulted in her 2007 guilty plea to criminal abandonment.
Evidence of prior bad acts is not admissible to prove the character of a person in order to show that she acted in conformity therewith. La. C.E. art. 404 B(1). The risk is that unrelated evidence might depict the defendant as a "bad person." State v. Jacobs, 99-0991 (La.5/15/01), p. 24, 803 So.2d 933, 950. Nevertheless, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident[.]" Id. The state charged Ms. Small with second degree murder under the theory of felony murder, which prohibits the killing of a human being when the offender is engaged in an enumerated offense "even though he has no intent to kill or to inflict great bodily harm." La. R.S. 14:30.1 A(2). The state neither alleged nor proved that Ms. Small had any intent to kill or inflict great bodily harm on Sha'Je'Burne. It is incongruous to admit evidence of other bad acts to prove intent when the offense of conviction does not require proof of intent. See State v. Ghoram, 290 So.2d 850 (La. 1974).
Even if evidence of prior bad acts is otherwise admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. The district court allowed a recitation of the plea colloquy from the prior offense, and the testimony of Officer Chandler, who investigated that incident; beyond this, the color photos of Ms. Small's prior apartment were sorely irrelevant and grievously prejudicial. They show that in 2006, she was an ineffective housekeeper and parent, but they depicted a different apartment and did not prove that the place that burned in January 2008 was in a similar state prior to the fire. Her act of neglect in the instant offense was a temporary absence from the home, not her slovenly domestic skills. There was no evidence that the January 2008 fire was more likely to start or spread because of a cluttered floor. Keeping a dirty house in 2006 is simply not relevant to the charge of leaving the children alone in 2008, but it definitely smeared Ms. Small as a bad person. This is precisely the type of prejudice that Art. 403 forbids.
Nonetheless, the verdict rendered was "surely unattributable" to this error. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 100. I therefore concur in affirming Ms. Small's conviction and sentence.
NOTES
[1] Neither provision has changed substantively since 2008.
[2] Both of the officers remained with J.S. until units from the Shreveport Fire Department arrived. Officer Plunkett testified, without objection, that he "was talking to [J.S.] and he said they started to cook something and it caught on fire and his sister . . ." At that point, the prosecutor interrupted and continued the questioning about other matters. J.S. did not testify.
[3] The court gave defendant a 60-day suspended sentence, and she was placed on one year of unsupervised probation. Defendant was also required to prove that she had completed a parenting class.